Good morning. May it please the Court, my name is Elizabeth Masakian. I represent appellant Marcos Mendiola, who is currently serving a term of life without the possibility of parole in a California State Prison. If it please the Court, I would like to reserve a few minutes for rebuttal if necessary. As this Court knows, in Beck v. Alabama, the United States Supreme Court held, this was a capital case under Alabama law, that the jury was given only two options in a capital case, guilty or not guilty, and that the risk that the jury would convict, although it might have reasonable doubt, was too great, and a third option, namely a lesser-included offense, a non-capital offense, should have been given and was required. And Beck's basis for the Supreme Court's basis for this holding was a due process clause violation. In my view, your claim just ends right with Beck. So maybe help me work through that. The Court specifically left open whether in a non-capital case the defendant had a due process right to a lesser-included instruction. Under AEDPA, we have to look to the Supreme Court's jurisprudence. It's an open question still. Why doesn't that just end your claim right there? Well, because I think that there is, first of all, there is a basis for the claim that is not only just the lesser-included offense issue, but there's the defense theory of the case. You got that instruction. I'm sorry. Your client got that instruction. No, he did not get it. You got a voluntary intoxication instruction. That was the defense. But the voluntary intoxication instruction without an instruction channeling the jury to say, okay, if you find that there's voluntary intoxication, you find that specific intent was negated, what do you do? He gets acquitted. He gets acquitted. No. No. He gets acquitted. That's an element the government has to prove. Well, but he – So if he – the lesser-included is you want a backup in case you don't hit the home run on the main charge. Exactly. Exactly. Right. And that's what Beck – That's a Beck claim. Well, I don't – I don't agree with you. Respectfully, I don't agree with you. Why? I want to hear why. I don't agree – I don't agree with you because the lesser-included offense as a defense theory of the case is an element that you have to prove. They had to prove, or they had to – they requested the instruction of not only voluntary intoxication negating specific intent, but that if it was negated, then the appropriate or the lesser-included offense was involuntary manslaughter. And I think that that is where – I don't think it's a matter of acquittal. And I think that's where the jury is not channeled. Can I just – if the government doesn't prove that he had specific intent because he's got a defense to that, the outcome is acquittal, right? Well, no. The outcome – then it – then you're exactly in the Beck situation where you've got – if the government proves – if the government doesn't prove it and you just have the choice of guilty or not guilty of a capital offense and there is no third option, that's where the due process violation comes in. What you're saying, though, is that the jury isn't really going to want to let the defendant off. Absolutely. And so they should have another option. The problem is that that all channels back to a lesser-included offense argument. I mean, you know, a lesser – you're entitled to get instructed on a defense, but a lesser-included offense is not a defense. And you got instructed on the defense, as Judge Watford said, when you got the intoxication instruction. And our position is that that is an incomplete instruction on the defense. When you just say that voluntary intoxication negates the specific intent without giving the jury information or the option or channeling the jury as to what they would do, and that's – that is the Beck situation. What do you do? You either – can you acquit? You have to give them a third option. We're talking about an extraordinarily serious case here. I mean, I don't have to tell this Court that other than the death penalty case, a capital case, we're talking about the most serious punishment, the most serious offense we have in California, which is first-degree murder with special circumstance allegations. And in this particular case, the jury was left without an option of where to go. And I think that, unless the Court has more questions and you don't want to hear anything more. No, no. Let's assume that we accept your argument on that point. I've still troubled by the harmlessness issue. I know you'll – I know we'll get there. Okay. So this Court granted the certificate of appealability and asked for counsel to be appointed. As the Court knows, Mr. Mendiola represented himself for purposes of the Federal District Court, both in the California Supreme Court and for the Federal District Court. And the Court granted the certificate of appealability to address the issue of whether the failure of the trial court to instruct on voluntary manslaughter and assault in relation to intoxication and the degree to which it negated specific intent entitled Mr. Mendiola to habeas relief. At the very beginning, it seemed like an uncomplicated question. It seemed like an issue that had been decided in some ways. But what was an uncomplicated issue became a very complicated issue soon, at least in my mind. Well, okay. But I don't – I'm not sure I buy that, because I – my review of the record suggests that he never even argued that his use of meth precluded him from forming the specific intent for first-degree murder. Am I wrong on that? I don't think – I don't think he did argue it, but he did ask for the instruction. He did elicit testimony about the use of drugs. And the fact of the matter is that he could ask for instructions that were inconsistent under this Court's authority. He could clearly do that. Right. But when we're talking about whether it was a harmful error not to give the lesser included, if he never even made the argument to the jury that, hey, I might be guilty of something else because I – my use of meth precluded me from forming the specific intent. He couldn't make that argument without the instruction. Well, weren't the instructions settled at the very end of the case? I mean, I'm saying he never – he testified. I understand that. He never testified, even though he was up there presumably trying to advance whatever defenses he was going to ask for instructions on at the end of the case. He never even argued or never even told the jury, hey, I was so high that I couldn't possibly have formed the specific intent to – I think he did talk about that. And I think that there was testimony from other – You're going to have to give me record sites on that. There was testimony from other witnesses. And I would be glad to give you record sites on that if I can just come back to it. Wasn't there some evidence that in the morning he had taken some meth? There was. And there was evidence – Earlier that morning. Earlier that same morning of the shooting, yes. There was evidence – he said he had been using meth all day, every day. And then there was evidence from two other witnesses that he was high on meth. Didn't the jury find – there were some other special allegations, correct? Mm-hmm. Like – The carjacking. The gang doing – The firearms. Specific – that he had – the jury found he had specific intent to further a gang interest or whatever that – Benefit the gang, the two firearm allegations. Why doesn't that show? I mean, the jury found the – found – made a finding that he had specific intent. Again, again, I don't think that – And that suggests that they didn't think that he was, you know, so incapacitated with respect to his ability to form. They had nowhere to go. Even if they found that he was incapacitated in terms of the murder charges, not the allegations, but in terms of the murder charges, he had nowhere to go. I have 23 seconds left, and if I could just – You have 2 minutes and 20 seconds left. Right. But I'm going to save 2 minutes because I think I'll probably need it. I just want to say this. Death is different. Clearly, death is different. But the risk that was discussed by the Supreme Court in Beck is equally applicable to virtually any criminal case, and it is certainly applicable to a law case. And with that, I have a minute, 58 seconds left. Thank you. Good morning. May it please the Court. Kelly Johnson, Deputy Attorney General, on behalf of Apelli. As the Court's comments to opposing counsel indicate, this Court is clearly aware that Mendiola has some major hurdles to overcome before he could even claim to be entitled to relief here. First, per Beck, this is not a federal question. A defendant does not have a right to an instruction on a lesser-included offense in a non-capital case. This is a non-capital case. And granting relief on – Sakian was basically arguing that it's more or less like a defense, so it comes within the theory that you're entitled to be instructed on a defense. What about that? That's true, but here this was not his theory of defense. He did not at all attempt to rely on this as – How do we know – I mean, you know, lawyers make their arguments based on the instructions that they get. How do we know that he wouldn't have been able to – in other words, you're defending a criminal case and you're faced with these two choices, turn him loose or convict him of the very serious offense. You're going to argue it differently than if you have this other third option in the middle. That's correct, Your Honor. So how can you rely on the fact that the lawyer didn't argue something that he wasn't given the opportunity to argue because of the absence of the instruction? Well, I believe Judge Wadford pointed out that the instruction discussion came at the end after all the evidence had been presented. At no point prior to that had defense counsel ever claimed that he was trying to present this intoxication defense. Well, he asked for the instruction, though. He asked for the instruction on – Didn't he get enough to claim it? I mean, he didn't give his closing argument until after he knew what the instructions were going to be. That's true. Well, there was absolutely no evidence that he was – that Mendiola was so intoxicated that he would be unable to form certain required intents. That goes back to Judge Wadford's point. In other words, he didn't testify about it either. Right. And that goes to Your Honor's point where how could counsel argue that when he had this entire trial fail to present any evidence that would support that defense? Yes, there was several – some witnesses who testified that Mendiola was high. However, he testified that he got high every single day several times a day for four years. You cannot be that high then that all of a sudden you kill someone and don't know that you killed the person. And another theory here – it wasn't an all-or-nothing theory as we're worried about in Beck. Here, the jury was presented with a felony murder theory that this murder was committed during the commission of a carjacking. And under that theory, there is no requirement to find specific intent for the murder. And that appears what happened here based on the jury's true finding on the carjacking during the commission of a murder special circumstance. Is that the one that got overturned on appeal or in the State court? No, that was the gang enhancement. That was the gang enhancement. Correct. Correct. It was overturned because there was insufficient evidence presented on whether this was a – this particular gang qualified as a gang within the meaning of the statute. Correct. That's correct, Your Honor. It wasn't nothing else. And nothing that would have seriously jeopardized the verdicts on the murder or even that for Brecht purposes. Those findings show that the jury had no problem handling his intent in this case. They had no questions. They were very convinced that he had the specific intent to commit the underlying crime, specifically the carjacking and also the murder. I don't – I guess I don't understand why the special verdict or the special finding relating to the gang enhancement. Yes, it required a finding of specific intent, but so, too, did the first-degree murder charge, right? I mean, why do we infer anything more from the jury's finding on the enhancement than we do from the fact that they convicted him of first-degree murder? Because the intoxication would have no play into that finding on the specific intent for the gang crime. So you can look at that independently. They weren't told anything about having – I'm sorry. They were instructed with the voluntary intoxication instruction that they would have to find that he intended that. And they had no doubts. If they had a doubt about his intent, they would have found that circumstance not true, that allegation untrue. And here they found it true, which shows that they were aware that he had the required specific intent. And his – importantly, his defense at trial here was that he did not do it. So how can he then argue, oh, I did it, but it was because of my meth use? That's just completely inconsistent. And again, the jury would – he would not have fared any better if he had made that argument. Unless the Court has any questions, I believe I'm prepared to submit. Thank you. Very briefly, the citations that the Court asked about is at Reporters' Transcript 1304, Appellant testified he'd been using drugs on July 30th, 2003. At 1304, that he used drugs every day, meth and marijuana every couple of hours. That after work on July 30th, he went home, showered, smoked some meth, and then he went to his girlfriend's house, 1305. From her house, they went to the brook where they smoked meth together, 1306. Counsel, I'm aware of all of that testimony about his use. I'm talking about where did he ever testify, told the jury, I was so high on meth that I could not have – that's what I'm saying. That's what he would have needed to say, right, to support that. He did not testify to that. But the fact of the matter is that defense counsel asked for that instruction. And I think the fact that – or to state that the jury was given the voluntary intoxication instruction is mistaken. Because the voluntary intoxication instruction, without telling the jury how to channel if they find that intoxication negated specific intent, what to do then. And I don't think that we can infer that the jury would have thought they would have had to acquit given the circumstances of this case. What basis would the defense lawyer have had to argue for the lesser included? What basis in the evidence would he have had to argue for the lesser included if he had gotten the instruction given the absence of any testimony by the defendant or anybody else that he shot him under this, you know, fog or cloud or whatever? I think the basis, the only basis he had in the record was the testimony of the witnesses. Did he use drugs in the morning? No. And that he looked pilled, I think was his expression. Pilled. Okay. That he looked pilled. He looked like he was under the influence of something. And pilled generally in gang language, which I'm unfortunately too familiar with, means under the influence of methamphetamine. And I think that to state that defense counsel's argument was limited because this instruction wasn't given is a complete understatement. I mean, if you are not given an instruction to argue to the jury, for counsel to argue to the jury that they could now reduce, if they found the evidence of intoxication negated specific intent, that they could find involuntary intoxication was completely impossible because that instruction was never given. With that, unless the Court has any further questions. No. Thank you, counsel. Thank you very much. We appreciate the arguments on both sides. The matter is submitted at this time.
judges: Kennelly, Paez, Watford